Larry Joe JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–01226–CR.

Court of Appeals of Texas, Dallas.

Nov. 7, 1988.

**798**

Andrew Dunlap, Dallas, Arthur M. Schwartz, Denver, Colo., for appellant.

Due Korioth, Dallas, for appellee.

Before ENOCH, C.J., and McCLUNG and LAGARDE, JJ.

ENOCH, Chief Justice.

Larry Joe Johnson appeals his conviction for obscenity arising from his sale of a pornographic magazine. Trial was to a jury. Punishment was assessed at one year confinement with a fine of $2,000, but the jail term was suspended and probation granted on the condition that Johnson spend 30 days in jail. In five points of error, Johnson contends that (1) the information was void; (2) the trial court erred in denying his motion for mistrial when evidence was admitted that informed the jury that a magistrate had previously ruled on the probable obscenity of the magazine; (3) the evidence was insufficient to establish that Johnson had knowledge of the content and character of the magazine; (4) the trial court erred in not instructing the jury that if they could not ascertain the community standard, then they should acquit Johnson; and (5) the trial court erred in not granting a motion for mistrial when the district attorney referred to children in her closing argument. We disagree and affirm the judgment.

### The Information

The information charged that:

then and there knowing the content and character of the material, knowingly and intentionally possess, with intent to promote, obscene material to-wit: one magazine title "F___in' with Soul," which depicts patently offensive representations of actual and simulated deviate sexual intercourse, to-wit: oral sodomy and anal sodomy.

In point of error number one, Johnson contends that the Texas Penal Code section 43.23(g) sets up a statutory exception to the charged offense. Therefore, states Johnson, the information, having failed to address the exception, was void.

■ Sub–section (g) provides that the obscenity statute does not apply to a person whose participation or conduct in the obscene act is in the course of law enforcement. It is correct that the State must negate the existence of an *exception* to an offense in the charging instrument and prove beyond a reasonable doubt that defendant or defendant's conduct does not fall within the exception. TEX.PENAL CODE ANN. § 2.02(b) (Vernon 1974). However, a *defense* to an offense need not be negated in the charging instrument. TEX. PENAL CODE ANN. § 2.03(b) (Vernon 1974).

Sub–section (g) does not expressly state whether it is a defense or an exception to the offense of obscenity. The sub-section merely states, "This section does not apply...." Section 2.02(a) of the Texas Pe-

nal Code provides that for an exception to an offense to exist it must be labeled by the phrase "It is an exception to the application of...." Therefore, sub-section (g) is not an exception to section 43.23. Although sub-section (g) is not plainly labeled as a defense, the Texas Penal Code provides that if a ground of defense is not plainly labeled, then it has the procedural and evidentiary consequences of a defense. TEX. PENAL CODE § 2.03(e) (Vernon 1974). As a defense, the terms of sub-section (g) need not be negated in the State's pleadings. TEX. PENAL CODE ANN. § 2.03(b) (Vernon 1974). *See also Bean v. State,* 691 S.W.2d 773, 775 (Tex.App.—El Paso 1985, pet. ref'd). Johnson's first point of error is overruled.

### Magistrate's Prior Independent Determination

Johnson's second point of error asserts that the trial court erred in not granting his motion for mistrial when the district attorney allegedly brought to the attention of the jury that a magistrate had made a prior independent determination as to the probable obscenity of the magazine.

During the direct examination of the police officer who made the arrest, the district attorney asked the officer what he did with the magazine once he bought it. The officer replied that the magazine was taken to a sitting magistrate for a ruling on the obscenity of the magazine. The officer was then asked if the magistrate made a ruling. The answer was yes. At this point, Johnson's attorney objected. The objection was sustained, and the jury was promptly instructed to disregard the last set of questions and answers. Johnson argues that these questions misled the jury to conclude its task had already been performed by the magistrate who issued the arrest warrant.

■ Generally, an error in asking an improper question or in admitting improper testimony may be cured or rendered harmless by a withdrawal of the testimony and an instruction to disregard it. *See Anderson v. State,* 633 S.W.2d 851, 855 (Tex.Crim.App.1982); *Todd v. State,* 598

S.W.2d 286, 293–94 (Tex.Crim.App.1980). An exception is made in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury. *White v. State,* 444 S.W.2d 921, 922 (Tex.Crim.App.1969).

In this case, the district attorney's questions established the sequence of events surrounding possession of the magazine. The police officer never indicated the actual ruling of the magistrate and, according to the record, the prosecutor expressly asked the police officer not to do so. The hearing on Johnson's objection was outside the presence of the jury. The two questions and answers were not of such character as to inflame the minds of the jury or to make it impossible for the jury to disregard the questions and answers as instructed by the court. *See Brandon v. State,* 599 S.W.2d 567, 580 (Tex.Crim.App.1979), *vacated on other grounds,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). The court's prompt action in withdrawing the testimony and instructing the jury to disregard made the testimony harmless. Johnson's second point of error is overruled.

### Insufficient Evidence

In his third point of error, Johnson alleges that the trial court erred in denying his motion for judgment of acquittal on the basis that the evidence was insufficient to establish that he had knowledge of the content and character of the magazine.

Johnson, an employee in an adult bookstore, did not testify in his own behalf. However, there was testimony from police officer Miller. In the course of undercover operations, officer Miller approached the New Venture Adult Bookstore on May 13, 1986. The front windows of the building were opaque and a sign posted on the front of the building stated, "If nudity offends you, do not enter." The inventory of the store consisted of magazines depicting on their covers men and women engaged in sexual intercourse or deviate sexual intercourse. The magazines were displayed side by side so that the covers could be seen. Johnson sat at an elevated counter, had a clear view of the store, and appeared

to be in sole and exclusive control of the store.

Officer Miller selected a magazine entitled "F___in' with Soul" and brought it to Johnson. The magazine was enclosed in clear plastic with a small price tag on the front cover. Both the front cover and the back cover explicitly displayed oral and anal sodomy. Johnson looked at the front cover to ring up the price. Officer Miller paid for the magazine and left.

Johnson argues that the only contact he had with the magazine was seeing the price of the magazine. Johnson contends that the only evidence the State produced is that, perhaps, he viewed the magazine cover, and the cover alone would not convey the knowledge that the magazine was obscene.

In judging the sufficiency of the evidence, the record is reviewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Skinner v. State,* 652 S.W.2d 773, 776 (Tex.Crim. App.1983). The evidence in the record demonstrates that a rational jury could find Johnson guilty of promoting obscenity beyond a reasonable doubt.

██ The relevant evidence in the case is: (1) opaque windows in the front of the building and the sign, "If nudity offends you, do not enter"; (2) no general subscription magazines in the store, such as *Time* or *Newsweek,* or even *The National Enquirer;* (3) the fact that Johnson appeared to be in sole and exclusive control of the store; and (4) the magazine in question was wrapped in clear cellophane and was on a shelf in clear view of Johnson. While no one of these elements is adequate to convict, their combination with the depictions on the magazine's cover and Johnson's opportunity to view it, are more than sufficient to find Johnson guilty of promotion of obscenity. *See Smith v. California,* 361 U.S. 147, 154, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959); *Carroll v. State,* 701 S.W.2d 913, 915 (Tex.Crim.App.1986). Johnson's third point of error is overruled.

## Jury Instruction

In his fourth point of error, Johnson contends that the trial court erred in refusing to properly instruct the jury. Specifically, Johnson requested an instruction that if the jury could not ascertain the contemporary community standard, Johnson was entitled to a judgment of acquittal. The requested instruction was as follows:

> If any of you [the jury] determine that you individually cannot arrive at the community standard, or that one does not exist, then you must vote to acquit.

The court refused to grant the proposed jury instruction. Instead, the court gave this instruction:

> In determining whether or not the material, if any, at issue is obscene, the jury must *first* determine whether or not the content of the material affronts current community standards of decency to the point of being patently offensive to the average person in the community. *Next* after examining the whole of the material, you must determine whether or not the average person applying contemporary community standards would find the material appeals to such a shameful, morbid, sick, perverse or lascivious interest in sex or excretion as to be prurient. And *finally*, the jury must determine whether or not a reasonable person would find the material, taken as a whole, lacks serious literary, artistic, political and scientific value. If these three tests for the determination of whether or not the material, if any, at issue is obscene are proven to you beyond a reasonable doubt, then you may find the material, if any, to be obscene; otherwise, *if any one of these three tests has not been proven to you beyond a reasonable doubt, the material, if any, is not obscene under our law.*

(emphasis added). The charge further stated that if the jury concluded, by applying the above three-part test, that the material was not obscene, "then [it should] acquit the defendant and say by [its] verdict not guilty."

Johnson argues that the instruction as given by the court mandates the jury to find that there are contemporary community standards. He contends that without his requested instruction, the jury is preempted from considering whether a contemporary community standard exists at all.

■ The community standard portion of the three-part test established in the jury instruction is the backdrop against which the jury identifies the material, and measures questions of appeals to the prurient interest in sex and what may constitute patent offensiveness. *See Andrews v. State*, 652 S.W.2d 370, 379 (Tex.Crim.App. 1983). Thus, it goes without saying that before members of a jury can decide whether given material is, in fact, obscene under the ambit of section 43.23 of the Texas Penal Code, they must first determine the governing "contemporary community standards." *Berg v. State*, 599 S.W.2d 802, 804 (Tex.Crim.App.1980).

Johnson impliedly asserts that the jury must first collectively determine what the community standard is and then apply that standard as the average person would to the allegedly obscene material. This is not correct. Each juror makes his or her own factual determination on the question of whether specific material violates the community standard. As a part of their proper role, the jurors discuss among themselves the community standard. Any particular juror may adopt any resulting consensus or rely upon his or her own understanding of the community standard. However, it is highly doubtful that any jury or any particular juror would ever be successful in articulating an abstract community standard on pornography without reference to the particular material before the jury.[1] Even if a juror could arrive at an abstract community standard, it would not be necessary for the jury itself to reach a consensus on what that standard is. It is only necessary that each individual juror be able to apply his or her view of the community standard as the

average person would apply it. If a particular juror determines that he or she cannot arrive at the community standard, or that one does not exist, then the jury could not find for the State on the first element of the charge and, therefore, an acquittal would result. An instruction as requested by Johnson would be redundant and therefore improper.

The trial court committed no error in excluding the proposed jury instruction. We have examined the two cases cited by Johnson to support his proffered instruction, *Commonwealth v. Trainor*, 374 Mass. 796, 374 N.E.2d 1216 (1978) and *State v. Kam*, 726 P.2d 263 (Hawaii 1986). We are unpersuaded by their rationale. Johnson's fourth point of error is overruled.

### *Improper Jury Argument*

In his fifth point of error Johnson contends that the trial court erred in denying his motion for mistrial where the district attorney, in closing argument, referred to children.

It is settled that an accused person shall receive a fair trial which is free from improper jury argument by the prosecuting attorney. *See Richardson v. State*, 158 Tex.Crim.Rptr. 536, 257 S.W.2d 308, 309 (1953). The approved general areas of jury argument within which all proper arguments must fall are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980); *Dunbar v. State*, 551 S.W.2d 382, 384 (Tex.Crim.App. 1977).

■ During closing argument, counsel for the State made the following statement:

Now, he [Johnson's attorney] mentioned that the legislature should be entitled to regulate child pornography. You know, your children are going to grow up someday. They aren't the adult standard.

---

1. "... I could never succeed in intelligibly [defining what is obscene]. But, I know it when I see it...." *Jacobellis v. Ohio*, 378 U.S. 184, 197,

84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Steward, J., concurring).

They're going to grow up. Is this what you want them to see?

Johnson contends that the comment concerning children not only altered the meaning of "community" and "average person" within the definition of obscenity, but also was speculative and prejudicially inflammatory.

The State argues that its comment was in response to the prior closing argument of Johnson's attorney who stated:

This is your opportunity to tell the government, to tell the legislature ... we want regulation for child pornography. We want the strongest, the strongest penalties possible; and that's the community standard ... the community standard is that adults have free choice. Regulation in this area yes, unequivocally. Punish and punish dearly those people that sell it to children. Punish and punish dearly those people that produce the magazines that depict children. Punish them. That's where the legislature is entitle to regulate....

The State also contends that its argument was a proper plea for law enforcement since Johnson's attorney, in closing arguments, referred to children in a manner that emphasized the difference between the adult community standard and a standard to protect children. The State asserts it simply continued to emphasize the difference.

From the record, we conclude that no improper jury argument was made. Johnson's final point of error is overruled. The judgment is AFFIRMED.